USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/29/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
MARIAN E. PARKER,

                        Plaintiff,

            -against-

CITIZEN'S BANK, N.A.
and KNOWLEDGENT GROUP, LLC.,

                       Defendants.
------------------------------------------------------------- X

19-CV-1454 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Marian E. Parker sued Defendants Citizens Bank, N.A.[1] ("Citizens") and Knowledgent Group, LLC ("Knowledgent") in state court for defamation and a declaratory judgment that Defendants violated the Americans with Disabilities Act ("ADA") when they terminated her employment. Citizens removed the case to this Court pursuant to 28 U.S.C. § 1446 based on federal question jurisdiction. Dkt. 1. On March 28, 2019, following Knowledgent's motion to dismiss, Plaintiff filed an Amended Complaint. Dkts. 10, 21. Defendants now move to dismiss all counts in the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkts. 22, 26. For the following reasons, Defendants' motions to dismiss are granted.

## BACKGROUND[2]

Knowledgent is a technology consulting firm that offers data and analytics services. Am. Compl. ¶ 4. Around April 2011, Citizens hired Knowledgent to staff the bank with IT

---

[1] "Citizen's Bank, N.A.'s" Notice of Removal indicates that the correct spelling of its name is "Citizens Bank, N.A." Dkt. 1. The Court uses the correct spelling for this opinion.

[2] The facts are based on the allegations contained in the Amended Complaint.

consultants to support its finance operations. *Id.* ¶ 10. At about the same time, Knowledgent hired Plaintiff and assigned her to the Citizens account. *Id.* ¶ 11.

Soon after being hired, Plaintiff was diagnosed with anemia and leukopenia. *Id.* ¶ 15. Plaintiff notified management at Knowledgent and Citizens that she would be out of the office due to illness from September 12 to September 16, 2011. *Id.* ¶ 16. A Knowledgent manager emailed Plaintiff that her systems access had been terminated and that she had been removed from her current work project because of her absence. *Id.* ¶ 17. Plaintiff complained to Knowledgent that without access she would not be able to complete Citizens' Business Requirements Document ("BRD"). *Id.* ¶¶ 19-20. Nonetheless, Plaintiff continued her work at Knowledgent's instruction. *Id.* ¶ 21.

From mid-September to early October 2011, Plaintiff attempted to complete the BRD without access to either Citizens' internal network or a Citizens laptop with the necessary computer applications. *Id.* ¶ 22. Citizens and Knowledgent allegedly knew that it was "almost impossible" to complete the BRD properly without access to the network and the bank's other resources. *Id.* ¶ 21. In early October, Plaintiff was asked to submit the BRD. *Id.* ¶ 22. Senior managers at Knowledgent then told Plaintiff that Citizens' manager was "dissatisfied" with her work, and Knowledgent terminated her employment. *Id.* ¶ 23.

Six years later Plaintiff sued Knowledgent and Citizens for breach of contract in small claims courts in New York City and Massachusetts. *Id.* ¶ 26. On January 8, 2018, in support of motions to dismiss and to quash discovery demands, Knowledgent filed a document titled "Termination Notification Form" in the New York lawsuit.[3] *Id.* ¶¶ 29-30, 40. This document

---

[3] The Amended Complaint does not specify whether Knowledgent also filed the document in the Massachusetts lawsuit.

contained a check mark next to "Job Performance/Skills" in the "Reason for Termination" section. *Id.* ¶ 34. The form was signed by the Chief Operating Officer of Knowledgent on October 14, 2011, two days after Plaintiff's termination. *Id.* ¶ 31.

Plaintiff had not seen this form before Knowledgent filed it in 2018. *Id.* ¶ 31. She alleges that it falsely represents the reason Knowledgent ended her employment and that both Knowledgent and Citizens knew the reason given to be false. *Id.* ¶ 35. The form—which is a part of her permanent employee file with Knowledgent and also a part of the public court record—is now available for anyone to see, including potential employers and government officials checking her background. *Id.* ¶¶ 36-37. In addition, Plaintiff will have to disclose to employers that she was terminated for cause when she applies for positions. *Id.* ¶ 50.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

### I. Plaintiff Does Not State a Claim for Defamation

Defendants' motions to dismiss Plaintiff's defamation claim are granted. A defamation claim must allege a false statement; publication to a third party without privilege or authorization; fault rising at least to the level of negligence; and special harm, if the false

3

statement is not defamation per se. *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003); *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dept. 1999). Plaintiff offers two theories of publication, but neither is plausible. Her first theory is that Defendant Knowledgent published the alleged defamatory statement when it filed the Termination Notification Form in state court in the course of litigation between the parties. This theory fails because that publication was absolutely privileged. Plaintiff's second theory is that by saying she was terminated for cause, Defendants are compelling Plaintiff to re-publish the defamatory statement whenever she applies for a new job. But this theory of publication is not recognized in New York.

Under New York law, "[i]t is well established that a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation." [4] *Pomerance v. McTiernan*, 51 A.D.3d 526, 528 (1st Dep't 2008) (quoting *Youmans v. Smith*, 153 N.Y. 214, 219 (1897)). This absolute privilege is based on "considerations of New York public policy intended to secure the unembarrassed and efficient administration of justice." *Kelly v. Albarino*, 485 F.3d 664, 665–66 (2d Cir. 2007) (citing *Hemmens v. Nelson*, 138 N.Y. 517, 523 (1893)). A statement is pertinent as long as, "by any possibility, under any circumstances, at any stage of the proceeding, [it] may be or may become material or pertinent . . . ." *Id.* at 666. And it is protected by absolute privilege even in "the presence of actual malice." *Id.* (citing *Sheridan v. Crisona*, 14 N.Y.2d 108, 112 (1964)).

---

[4] The parties briefed only New York law and did not discuss choice of law. The Court does not analyze choice of law because under either New York or Massachusetts law the result is the same. Massachusetts, like New York, recognizes an absolute privilege for allegedly defamatory statements made in a judicial proceeding. *See Opalenik v. LaBrie*, 945 F. Supp. 2d 168, 197 (D. Mass. 2013) ("[I]t is well settled that statements made in the course of judicial proceedings which pertain to those proceedings are absolutely privileged and cannot form the basis for a defamation claim, even if uttered with malice or in bad faith." (quotation omitted)) (applying Massachusetts law).

The termination form constitutes "a statement made in the course of legal proceedings" that is "pertinent to the litigation." *Pomerance*, 51 A.D.3d at 528 (quotation omitted). Knowledgent filed the form in state court as part of its opposition to Plaintiff's motion for discovery and in support of its motion to dismiss. The form was used to "dispute the allegations from [Plaintiff]" and "support the allegation that [Plaintiff] was dismissed for cause." Am. Compl. ¶ 30. As such, based on the facts alleged in the Amended Complaint, it is absolutely privileged.

The Court finds no merit in Plaintiff's argument that the form is not protected by absolute privilege because it was "voluntarily supplied to the Court in a discovery proceeding" and thus "not made as part of a judicial or quasi-judicial proceeding." Pl.'s Opp'n (Dkt. 29) at 15. She offers no reason to treat statements made in discovery proceedings any differently from those made in other judicial proceedings. Nor does there appear to be one: the same public policy of "secur[ing] the unembarrassed and efficient administration of justice" applies as much to discovery disputes as it does to other judicial proceedings. *Kelly*, 485 F.3d at 665 (citations omitted). In any event, the form was filed not just in opposition to Plaintiff's motion for discovery, but also in support of Knowledgent's motion to dismiss.

Plaintiff offers as a second theory of publication that she must now report to potential employers that she has been terminated for cause. *See* Am. Compl. ¶ 50; Pl.'s Opp'n at 1. This theory of compelled self-publication can be seen as an exception to the rule that consent to publication bars a defamation action. *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 102 (E.D.N.Y. 1997). This issue generally arises in the employment termination context when, as here, the terminated plaintiff alleges that she is compelled to "repeat the defamatory statement in the process of applying for a new job." *Id.* (citing *Lewis v. Equitable*

5

*Life Assurance Society of the United States*, 389 N.W.2d 876, 886 (Minn. 1986)). Although the Court understands the rationale behind this theory, it has been clearly rejected by New York courts.[5] *Phillip v. Sterling Home Care, Inc.*, 103 A.D.3d 786, 787 (2nd Dep't 2013) (citing *Wieder v. Chem. Bank*, 202 A.D.2d 168, 169–70 (1st Dep't 1994)).

## II. The Court Will Not Entertain Plaintiff's Claim for Declaratory Relief

Plaintiff also seeks a declaratory judgment that she was "wrongfully terminated solely due to Defendants [sic] malfeasance in violation of the [ADA]." Am. Compl. at 46. Plaintiff elaborates in response to the motion to dismiss that she "is not seeking any relief under the ADA, but merely an adjudication of whether the Defendants followed the law in terminating Plaintiff for cause." Pl.'s Opp'n at 6.[6] A court has discretion to decide whether to declare a plaintiff's rights as a litigant. Here, the Court chooses not to do so. Declaratory judgment is a remedy designed to address ongoing or prospective harm when the legal relations between parties are uncertain. But Plaintiff's claim is based on past harms only, and there is no current or impending controversy about the rights or obligations between them for this Court to clarify.

Under the Declaratory Judgment Act ("DJA"),[7] a court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

---

[5] The theory of self-publication has also been rejected by Massachusetts courts. *See Doe v. Amherst College*, 238 F. Supp. 3d 195, 227 n.7 (D. Mass. 2017) (citing *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 78–79 (2004)) ("If defamation law is to provide a remedy for [Plaintiff], the correct party to be charged with culpability must be, as it always has been, the originator of the defamatory statement communicated to a third party.").

[6] Despite the allegations in her Amended Complaint, Plaintiff inexplicably asserts in responding to Defendants' arguments regarding the insufficiency of her ADA claims that she is not seeking relief under the ADA at all, but is instead "[seeking] a declaratory judgment under New York Law under CPLR § 3001 et seq. asking the Court to review the actions of the defendants in her termination to determine if it comported with the Rules of the ADA and the New York Human Rights [Law] . . . ." Pl.'s Opp'n at 6. In fact, Count One of the Amended Complaint clearly invokes the ADA and does not mention the New York Human Rights Law.

[7] Plaintiff also argues that declaratory relief would be proper under the state equivalent of the DJA, CPLR § 3001. The Court disagrees; the DJA, not the CPLR, governs actions in federal court. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("We have repeatedly characterized the Declaratory Judgment Act as an enabling Act . . .

could be sought." 28 U.S.C. § 2201(a) (emphasis added). "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). To decide whether to entertain a declaratory judgment action, courts in this circuit should consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005); *see also Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003)) (indicating that courts in this circuit may consider additional factors).

The purpose of declaratory relief is to relieve litigants from the ongoing or imminent harm they may suffer when their rights vis-à-vis each other are uncertain. *See United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) (Friendly, J.) (quoting *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963)) ("[T]he fundamental purpose of the DJA is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.'"); C. Wright & M. Miller, 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed.) ("The remedy made available by the [DJA] is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued."). It is therefore a "prospective remedy intended to resolve or mitigate disputes that

---

."); *cf. Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007) (noting that in diversity cases the DJA still "provides the procedural mechanism for granting declaratory relief").

may yield later litigation." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018); *see Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (noting that declaratory judgment is "prospective relief"); *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("[D]eclaratory relief is intended to operate prospectively.").

Declaratory relief in this case would not resolve any ongoing or impending harm to Plaintiff vis-à-vis her relationship with Defendants. To obtain declaratory relief, a "plaintiff must establish how he or she will be injured *prospectively* and that the injury would be prevented by the equitable relief sought." *Marcavage*, 689 F.3d at 103 (emphasis added). But the relief Plaintiff seeks is based on events that occurred eight years ago when Defendants terminated her employment. Plaintiff does not allege that Defendants are currently infringing, or are about to infringe, any of her rights; Plaintiff alleges only that her rights *were* infringed in 2011. Such allegations of past harm simply do not warrant declaratory relief. *See, e.g.*, *Berry-Mayes for Estate of Berry v. New York Health & Hosps. Corp.*, No. 14-CV-9891, 2016 WL 8461191, at *11 (S.D.N.Y. Sept. 19, 2016), *aff'd in part* sub nom. *Berry-Mayes v. New York City Health & Hosps. Corp.*, 712 F. App'x 111 (2d Cir. 2018) (declining to consider claim for declaratory relief because Plaintiff's claims are directed at past events that "do not implicate the 'accrual of avoidable damages' or a need for 'early adjudication'" (quoting *Doherty*, 786 F.2d at 498)). Plaintiff cites cases where declaratory relief was appropriate relative to the ADA and other anti-discrimination laws, but those cases all concerned ongoing failures to provide accommodations and other entitlements like food stamps; and those failures were presently harming the plaintiffs. *See* Pl.'s Opp'n at 11–12. That is not the case here.

Plaintiff's requested declaratory relief also would not clarify any uncertainty in the parties' legal relations. Whether Defendants violated Plaintiff's rights under the ADA in 2011 is irrelevant to any current rights or obligations between the parties. There is no ongoing or impending controversy that the Court could resolve or mitigate by "declar[ing] the rights and other legal relations" between them. 22 U.S.C. § 2201(a); *see, e.g.*, *Glara Fashion, Inc. v. Holder*, No. 11-CV-889, 2012 WL 352309, at *12 (S.D.N.Y. Feb. 3, 2012) (denying motion for declaratory judgment because plaintiff "has failed to demonstrate the existence of any right that is being or is likely to be infringed").

Although it is conceivable that the alleged events could give rise to a direct ADA claim,[8] they are not an appropriate basis for a DJA action. Plaintiff appears to be trying to use the DJA to avoid the procedural requirements that attach to a direct ADA claim. *See* Pl.'s Opp'n at 7; *cf. John Wiley & Sons*, 2011 WL 5245192, at *4 ("[T]o allow a declaratory judgment action under the facts before us would be to allow a substitute for the traditional procedures for adjudicating

---

[8] The Court is skeptical, however, that Plaintiff would be successful even if she were pursuing a direct ADA claim—which she vociferously denies. *See* Pl.'s Opp'n at 1, 7; Parker Decl. (Dkt. 30) ¶¶ 2-3. Defendants argue that Plaintiff is barred by 42 U.S.C. § 2000e–5's exhaustion requirement (which, as applied here, Defendants incorrectly construe as a statute of limitations). *See, e.g.*, Knowledgent's Br. (Dkt. 28) at 6. Defendants are half right. It is true that to bring a lawsuit alleging an unlawful employment decision under Title I of the ADA—which "prohibits employers from discriminating against disabled employees"—a plaintiff must first file a timely charge with the Equal Opportunity Employment Commission ("EEOC"). *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007); *see* 42 U.S.C. § 12117(a) (incorporating the exhaustion requirement of Title VII codified at 42 U.S.C. § 2000e–5 into the ADA). It is also true that the exhaustion requirement applies when ADA rights are asserted in a declaratory judgment action. *See Shariff v. Coombe*, 655 F. Supp. 2d 274, 297 n.27 (S.D.N.Y. 2009) (citing *Golden v. Zwickler*, 394 U.S. 103, 110 (1969) ("The Declaratory Judgment Act cannot resurrect substantive claims that are defeated by jurisdictional, exhaustion, mootness, or other defenses.")). But the exhaustion requirement is an affirmative defense, not a jurisdictional requirement. *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (holding that failure to exhaust administrative remedies under 42 U.S.C. § 2000e–5 is an affirmative defense). As a result, Plaintiff is not required to plead exhaustion. Although Defendants may still raise it on a motion to dismiss if the defect "appears on the face of the complaint," *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004), an exhaustion defect does not appear on the face of the Amended Complaint. Thus, the Court cannot dismiss the declaratory judgment claim on this ground. *See, e.g., Frederic v. NFC Amenity Mgmt.*, No. 17-cv-5769, 2018 WL 4735715, at *3 (S.D.N.Y. Sept. 28, 2018). Nonetheless, the conspicuous absence of any mention of Plaintiff having filed an EEOC charge in the litigation history recited in both the Amended Complaint and Plaintiff's opposition brief and supporting declaration leaves the Court doubting that a direct ADA claim would survive Defendants' affirmative defense that Plaintiff failed to exhaust administrative remedies.

9

fraud cases" (quotation omitted)). But regardless of her motivation for pursuing only declaratory relief, Plaintiff "cannot rely solely on past injuries" to obtain declaratory relief, as the Amended Complaint does here. *Marcavage*, 689 F.3d at 103; *see Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp., Inc.*, No. 2-CV-10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("There is no basis for declaratory relief where only past acts are involved."). The Court therefore declines to expend judicial resources to resolve Plaintiff's claim.[9]

### III. Plaintiff's Claims for Equitable Relief and Legal Fees Are Dismissed

Plaintiff's requests for equitable relief and legal fees and costs are not independent causes of action. Thus, Defendants motions to dismiss Plaintiff's third and fourth causes of action for failure to state claims are granted. Plaintiff requests remedies that may only be premised upon her declaratory judgment and defamation claims. Because the Court grants Defendants' motions to dismiss both of those claims, the Court also dismisses Plaintiff's requests for equitable relief and legal fees and costs.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's Amended Complaint are GRANTED. Plaintiff's defamation claim and declaratory judgment claim are dismissed with prejudice. As to the claim for defamation, Plaintiff is denied leave to amend because the claim is barred as a matter of law; amendment would, therefore, be futile. As to her ADA claim, her response to the motion to dismiss makes clear that she is not seeking damages for the alleged violation of her ADA rights. Because amending her request for declaratory relief

---

[9] Plaintiff also asserts that she is pursuing declaratory relief in order to "invalidate" and "expunge" the allegedly defamatory termination form. Parker Decl. ¶¶ 3, 5. The Court could perhaps construe the existence of the termination form as an ongoing harm, but Plaintiff is clear that she is pursuing rights under defamation law, not the ADA, as to the termination form and its filing in a court proceeding.

10

would be futile, leave to amend is denied.  The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 22 and 26 and to close the case.

**SO ORDERED.**

Date:  October 29, 2019
       New York, New York

                                       **VALERIE CAPRONI**
                                       **United States District Judge**